**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

CBRE, INC.,

      Plaintiff,

v.

CAPITAL COMMERCIAL REAL ESTATE
GROUP, INC.

      Defendant.

**Case No. 19-cv-61235**

## COMPLAINT

Plaintiff CBRE, Inc. ("Plaintiff" or "CBRE"), for its complaint against Defendant Capital Commercial Real Estate Group, Inc. ("Defendant" or "Capital Commercial"), alleges as follows:

### NATURE OF THE ACTION

1.    This is a civil action for federal trademark infringement, trade dress infringement, false designation of origin, and cybersquatting in violation of 15 U.S.C. §§ 1114, 1125(a), and 1125(d); trade dress infringement and unfair competition in violation of the common law of the State of Florida; and statutory deceptive and unfair trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Sta. §§ 501.201 *et seq.*

### PARTIES

2.    Plaintiff CBRE is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 400 S. Hope Street, 25th Floor, Los Angeles, CA 90071.

3.    On information and belief, Defendant Capital Commercial is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 7605 Davie Road Extension, Davie, FL 33024. The Florida Department of State, Division of

1

Corporations' records identify Randy North as Capital Commercial's registered agent and provide a residential address as the location for service.

## JURISDICTION AND VENUE

4.      CBRE's trademark claims arise under the Trademark Act of 1946 (the "Lanham Act"), as amended by the Trademark Dilution Revision Act of 2006. Accordingly, this Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 1121 (Lanham Act).

5.      This Court has pendent and supplemental jurisdiction over all related state law claims in accordance with 28 U.S.C. §§ 1338(b) and 1367 because the state law claims involve unfair competition, arise from the same nucleus of operative facts as the federal law claims, and are so related to the federal law claims that they form part of the same case and controversy.

6.      This Court has personal jurisdiction of the Defendant because Defendant is incorporated in this district, maintains a principal place of business in this district, conducts continuous and systematic business activities in this district, and a substantial portion of Defendants' acts giving rise to CBRE's claims occurred in this district.

7.      Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391 because Defendant resides in this district and a substantial part of the events giving rise to CBRE's claims occurred in this district.

## FACTUAL ALLEGATIONS

## CBRE and its Registered Trademarks

8.      With over 90,000 employees, Plaintiff CBRE is the world's largest commercial real estate services and investment firm. CBRE has been named one of Fortune's "Most Admired Companies" for seven years in a row, including a number one ranking in the real estate sector in

2019. Lipsey—a renowned training and consulting firm in the commercial real estate industry—recently ranked CBRE as the top real estate brand for an eighteenth consecutive year. CBRE operates over 200 U.S. offices, including nine in the state of Florida.

9.     In 1906, the company that is now CBRE began in San Francisco, California. By the 1940's it had grown to become one of the largest commercial real estate services companies in the western United States. Throughout the 1960's and 1970's, CBRE rapidly expanded its real estate services portfolio and geographic reach throughout the United States. Shares of CBRE began publicly trading in 2004, and the company was subsequently added to the S&P 500 in 2006. Since then, through organic growth and acquisitions, CBRE has become the largest real estate services company in the world.

10.     CBRE owns numerous trademark registrations, including the CBRE trademark, for a wide-ranging assortment of real estate and financial services. Among these are the following U.S. trademark registrations:

| Trademark | Reg. No. / Reg. Date | Services | Date of First Use |
|---|---|---|---|
| **CBRE** <br><br> (for the letters "CBRE" in stylized form) | 4,161,000 / June 19, 2012 | Capital Investment Consultation Services; Financial Services In The Nature Of Commercial And Multi-Family Mortgage Banking And Loan Servicing, Mortgage Brokerage Services, Investment Consultation And Investment Management Of Funds Relating To Real Estate And Real Estate Companies; Residential And Commercial Real Estate Agency, Appraisal, Brokerage, Investment Ant) Management Services; Financial Analysis And Consultation Relating To Real Estate; Financial Valuation Of Real Estate; Financial Valuation Of Personal Property, Namely, Equipment; Financial Portfolio Management Of Residential And | 07/2003 |

| | | Commercial Real Estate; Financial Research, Management And Investment In The Area Of Residential And Commercial Real Estate, Namely, Research In The Field Of Acquisition And Disposition Of Real Estate, And Assets Management, Namely, Management Of Assets In The Form Of Real Estate Property, And Investment And Management Of Stock In Real Estate Companies That Hold, Manage, Buy And Sell Real Estate; Residential And Commercial Real Estate Facilities Management, Namely, Leasing Of Real Property, In Class 36 (U.S. Cls. 100, 101 And 102). | |
|---|---|---|---|
| **CBRE** | 2,925,943    / Feb. 8, 2005 | Capital Investment Consultation Services; Insurance Services, Namely, Insurance Underwriting And Consulting Services In The Field Of Property, General Liability Insurance; Financial Services In The Nature Of Commercial And Multi-Family Mortgage Banking And Loan Servicing, Mortgage Brokerage Services, Estate Planning; Investment Consultation And Investment Management Of Funds Relating To Real Estate And Real Estate Companies; Residential And Commercial Real Estate Agency, Appraisal, Brokerage, Investment And Management Services; Financial Analysis And Consultation Relating To Real Estate; Financial Valuation Of Real Estate; Financial Valuation Of Personal Property, Namely, Equipment; Financial Portfolio Management Of Residential And Commercial Real Estate; Financial Research, Management And Investment In The Area Of Residential And Commercial Real Estate, Namely, Research In The Field Of | 11/2002 |

| | | Acquisition And Disposition Of Real Estate, And Assets Management, Namely, Management Of Assets In The Form Of Real Estate Property, And Investment And Management Of Stock In Real Estate Companies That Hold, Manage, Buy And Sell Real Estate; Residential And Commercial Real Estate Facilities Management, Namely, Leasing Of Real Property, In Class 36 (U.S. Cls. 100, 101 And 102). | |
| --- | --- | --- | --- |
| **CBRE** | 2,925,952 / Feb. 8, 2005 | Residential And Commercial Real Estate Development; Residential And Commercial Real Estate Construction Services, Namely, Planning, Laying Out And Construction Of Residential And Commercial Real Estate; Residential And Commercial Real Estate Construction Management Services, In Class 37 (U.S. Cls. 100, 103 And 106). | 11/2002 |

11.     These registrations remain in full force and effect. They have each become incontestable under 15 U.S.C. § 1065.

12.     Since at least 2003, CBRE adopted and has used in commerce in the United States a unique and distinctive logo for its commercial real estate services that combines the following elements: (1) the letters "CBRE" in the distinctive stylized form covered by its U.S. Trademark Registration No. 4,161,000; and (2) dark green letters against a white backdrop (or vice versa). Examples of the CBRE logo are shown below:





Collectively, when referring to marks owned by CBRE, including the registered trademarks and logos identified above, these marks are referred to as the "CBRE" brand or trademarks. The CBRE trademarks are distinctive, arbitrary, fanciful, and entitled to the broadest scope of protection. True and correct copies of U.S. Trademark Registration Nos. 4,161,000, 2,925,943, and 2,925,952 are attached hereto as **Exhibits A through C**, respectively.

13.     Since at least 2003, CBRE has adopted and used in commerce in the United States a unique and distinctive website layout to market its real estate and financial services (hereinafter, the "CBRE Trade Dress") that combines the following elements: (1) the letters "CBRE" in the distinctive stylized form covered by its U.S. Trademark Registration No. 4,161,000; (2) dark green letters against a white backdrop (or vice versa); (3) white or dark green horizontal banners at the top and bottom of its webpage that include white or dark green lettering; and (4) a logo including the "CBRE" lettering located in the top banner.

14.     The CBRE Trade Dress is inherently distinctive, completely arbitrary when applied to CBRE's services, and non-functional. The CBRE Trade Dress is highly unique in the commercial real estate marketplace.

15.     For many years prior to the events giving rise to this Complaint and continuing to the present, CBRE has devoted tremendous resources to advertising and promoting its services under the CBRE trademarks and Trade Dress. CBRE has used these marks in commerce in the United States since 2003. CBRE's services are advertised in print media and on the Internet that is available to the public at large and to commercial real estate professionals and consumers alike. Promoting the CBRE brand throughout the United States and Florida, including through extensive

sales, publicity, awards, and sustainability initiatives, CBRE has acquired enormous goodwill and recognition in its CBRE trademarks and Trade Dress. Consumers of commercial real estate services are very familiar with the CBRE trademarks and Trade Dress and their connection to the best-in-class services offered by CBRE. As a result, CBRE enjoys the exclusive right to use the CBRE trademarks and Trade Dress in the United States in connection with its real estate and financial services.

### Capital Commercial's Infringement and Deceptive Trade Practices

16.     Defendant Capital Commercial purports to be a leader in marketing commercial real estate and businesses in South Florida. For over a decade, Capital Commercial used the domain name "capitalcomgroup.com" to direct customers to the homepage of its website, which displayed the name "Capital Commercial Real Estate Group" in white lettering against a blue backdrop with images of skyscrapers:

### April 2005



7

**February 2010**



**February 2015**



**January 2019**



17.     Recently, however, Capital Commercial changed its domain name to "ccreflorida.com" and incorporated into its website and marketing materials a logo bearing white "CCRE" letters against a dark green backdrop, and a logo bearing dark green "CCRE" letters against a white backdrop. These logos use very similar—if not identical—coloring schemes and fonts to those protected by CBRE's trademarks and Trade Dress. The strikingly similar nature of Capital Commercial's redesigned materials creates and reinforces consumers associations between CBRE and Capital Commercial, despite the two companies having no actual business association. The new Capital Commercial logos are featured prominently throughout Capital Commercial's website, in print and online advertisements and signage, and in employment solicitations for real estate agents. As Capital Commercial acknowledges, "[b]y utilizing the many marketing sources,

we are able to give our listings exposure to the mass market…reaching the majority of potential buyers." *See* http://www.ccreflorida.com/about-us/.

18.     For instance, CCRE's website, as shown in the screenshots below, incorporates the following elements: (1) the letters "CCRE" in the distinctive stylized form covered by CBRE's U.S. Trademark Registration No. 4,161,000; (2) white letters against a dark green backdrop; (3) a dark green horizontal banner at the top and bottom of the webpage that includes white lettering; and (4) a logo including the "CCRE" lettering located in the top banner:



19.   In the following advertisement, Capital Commercial uses one of its new copycat logos to solicit candidates for potential hire as real estate agents:



20.   A side-by-side comparison of the CBRE logo and one of Capital Commercial's new logos illustrates the similarities between the respective marks.

| CBRE Logo | New Capital Commercial Logo |
|---|---|
|  | |

21.   In tandem with its logo changes, Capital Commercial changed its domain name from "capitalcomgroup.com" to "ccreflorida.com" to increase consumer traffic and direct consumers away from the CBRE website to its own website. Capital Commercial recently

11

registered the "ccreflorida.com" domain, as shown in the WHOIS record attached as **Exhibit D**. On its homepage, Capital Commercial lists its contact information by email as "info@ccreflorida.com."

22.     The website "ccreflorida.com" repeatedly and prominently displays the confusingly similar new Capital Commercial logo and additional protected website elements without CBRE's permission. A copy of Capital Commercial's homepage from the "ccreflorida.com" website is attached hereto as **Exhibit E**. Also, CBRE is a leader in commercial real estate activities in Florida, and "ccreflorida.com" and "info@ccreflorida.com" are similar to CBRE's social media name "@cbre_Florida."

23.     There is no question that Capital Commercial is well aware of CBRE's prior rights and that it is willfully and wantonly using its new logo and website design as a means to capture the goodwill that CBRE has spent many years and millions of dollars developing. On February 7, 2019, CBRE's Deputy General Counsel sent a letter to Mr. North—Capital Commercial's registered agent—demanding that Capital Commercial cease its infringing activities, including refraining from using the new Capital Commercial logo and new "ccreflorida.com" domain name. In its letter, CBRE identified and attached the U.S. Trademark Registration No. 4,161,000, and identified the CBRE trade dress that Capital Commercial infringed. The February 7, 2019 letter is attached hereto as **Exhibit F**. Capital Commercial did not respond.

24.     Accordingly, CBRE followed up with Capital Commercial on April 3, 2019, with another letter to Mr. North. In this letter, CBRE identified and attached the CBRE trademark, identified and attached the CBRE Trade Dress, and once again demanded that Capital Commercial cease its infringing activities—including use of its new logo and the "ccreflorida.com" domain name—placing Capital Commercial on notice of its federal and state law claims for trademark

infringement, trade dress infringement, and unfair competition. CBRE requested a response no later than April 16, 2019. The April 3, 2019 letter is attached hereto as **Exhibit G**.

25.     Instead of responding or ceasing its unlawful activities, Capital Commercial altered its new website logo to read "CCREG"—utilizing the same font and green and white color scheme—shortly after CBRE sent the April 3, 2019 letter.

### Harm to CBRE

26.     Real estate consumers' longstanding association of the CBRE trademarks and Trade Dress with CBRE will likely be substantially diminished and eroded if Capital Commercial continues to use the CBRE trademarks and Trade Dress in connection with its competing services.

27.     Capital Commercial's activities have caused, and will continue to cause, confusion in the marketplace. On information and belief, real estate consumers have, for example, attributed Capital Commercial's commercial real estate services to CBRE, causing a range of damages including the deprivation of CBRE's right to control the reputation associated with the CBRE brand, marks, and trade dress. On information and belief, Capital Commercial intended this outcome when it recently discarded its longstanding blue and white logo to adopt a strikingly similar logo to the CBRE trademarks and Trade Dress in order to target CBRE's commercial real estate customers.

28.     Capital Commercial's infringement has been, and continues to be, willful. At a minimum, on information and belief, Capital Commercial deliberately adopted its new mark and website design for the purpose of confusing the relevant marketplace into associating its services with that of CBRE. Moreover, Capital Commercial continues to market those services in an infringing manner despite having been put on notice of the CBRE trademarks and trade dress and Capital Commercial's infringement of the same.

29.     Capital Commercial's actions have caused irreparable harm to CBRE for which money damages and other remedies are inadequate. Unless Capital Commercial is restrained by this Court, it will continue to cause irreparable damages and injury to CBRE, including by:

  a.  Depriving CBRE of its statutory rights to use and control the CBRE trademarks and Trade Dress;

  b.  Creating a likelihood of confusion, mistake, and deception among consumers as to the source of the infringing services, including those in connection with commercial real estate and/or financial services;

  c.  Causing the public to falsely associate CBRE with Capital Commercial and/or its services, or vice versa;

  d.  Causing irreparable and incalculable damage to CBRE's goodwill and the CBRE trademark and Trade Dress by creating negative associations with Capital Commercial's inferior services;

  e.  Causing CBRE to lose revenue associated with the services offered under the authentic CBRE trademarks and Trade Dress; and

  f.  Causing Capital Commercial to capture profits and goodwill from the CBRE trademarks and trade dress by exploiting these marks to the detriment of the deceived consumers.

Accordingly, in addition to damages and recovery of Capital Commercial's profits, CBRE is entitled to injunctive relief against Capital Commercial.

## COUNT I
### Infringement of Registered Trademarks
### in Violation of 15 U.S.C. § 1114

30.     CBRE incorporates by reference the allegations set forth in paragraphs 1 through 29 as if fully set forth herein.

31.     CBRE is the owner of the CBRE trademarks described above. The registrations are *prima facie* evidence of CBRE's ownership of, and the validity of, the marks in the United States.

32.     Capital Commercial has used, in connection with the sale, offering for sale, distribution, and advertising of its commercial real estate services, words and symbols that infringe upon CBRE's registered trademarks.

33.     Capital Commercial's use of the registered CBRE trademarks in connection with its commercial real estate services creates a likelihood of consumer confusion that Capital Commercial is authorized to provide CBRE services, when it is not.

34.     These acts of trademark infringement have been committed deliberately, willfully, and wantonly with intent to cause confusion, mistake, or deception.

35.     As a direct and proximate result of Capital Commercial's conduct, CBRE is entitled to recover up to treble the amount of Capital Commercial's unlawful profits and CBRE's damages, and an award of attorneys' fees under 15 U.S.C. § 1117(a).

36.     Both CBRE and the public will suffer irreparable harm if Capital Commercial's infringement continues. Accordingly, CBRE is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Capital Commercial to stop using CBRE's registered trademarks in connection with real estate and financial services, and to cease use of any other mark, design, or logo that creates likely confusion that Capital Commercial is authorized to provide CBRE branded services, or that there is any affiliation between CBRE and Capital Commercial.

## COUNT II
### Trade Dress Infringement and False Designation
### of Origin Under 15 U.S.C. § 1125(a)

37.     CBRE incorporates by reference the allegations set forth in paragraphs 1 through 36 as if fully set forth herein.

38.     CBRE's Trade Dress, including the CBRE logos and website identified above with their particular font and color schemes, are highly distinctive, and continue to acquire substantial distinctiveness and goodwill in the marketplace through CBRE's widespread and continuous use of that Trade Dress in commerce. As a result of CBRE's widespread and continuous use of the CBRE Trade Dress, the CBRE Trade Dress has become associated with CBRE in the minds of the relevant purchasing public.

39.     Capital Commercial's new logos and website design, including the font and website color schemes identified above, has caused, and is likely to continue to cause, confusion in the minds of the consuming public, leading consumers to falsely believe that the Capital Commercial services are associated with CBRE or otherwise authorized by CBRE.

40.     Capital Commercial's adoption and use of the infringing trade dress has exploited, and continues to exploit, the goodwill and reputation associated with the CBRE Trade Dress.

41.     These acts of trade dress infringement have been committed deliberately, willfully, and wantonly with intent to cause confusion, mistake, or deception.

42.     As a direct and proximate result of Capital Commercial's conduct, CBRE is entitled to recover up to treble the amount of Capital Commercial's unlawful profits and CBRE's damages, and an award of attorney's fees under 15 U.S.C. § 1117(a).

43.     Both CBRE and the public will suffer irreparable harm if Capital Commercial's infringement continues. Accordingly, CBRE is entitled to injunctive relief pursuant to 15 U.S.C.

16

§ 1116(a) that requires Capital Commercial to stop using CBRE's Trade Dress in connection with real estate and financial services, and to cease use of any other mark, design, or logo that creates likely confusion that Capital Commercial is authorized to provide CBRE branded services, or that there is any affiliation between CBRE and Capital Commercial.

## COUNT III
## Cybersquating in Violation of 15 U.S.C. § 1125(d)

44.     CBRE incorporates by reference the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

45.     Capital Commercial has registered, is using, and is trafficking in the domain name identified in Paragraph 21 above.

46.     The domain name identified in Paragraph 21 is confusingly similar to the CBRE trademarks.

47.     CBRE's rights in the CBRE trademarks long predate Capital Commercial's registration of this domain name.

48.     Capital Commercial is using this domain name with bad faith intent to trade off of the goodwill and profit from the CBRE trademarks.

49.     As a direct and proximate result of Capital Commercial's conduct, CBRE is entitled to recover up to treble the amount of Capital Commercial's unlawful profits and CBRE's damages, and an award of attorney's fees under 15 U.S.C. § 1117(a).

50.     Both CBRE and the public will suffer irreparable harm if Capital Commercial's use of this domain name continues. Accordingly, CBRE is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) requiring Capital Commercial to stop using the domain name identified in Paragraph 21 in connection with real estate and financial services, and to cease use of any other

domain name that creates likely confusion that Capital Commercial is authorized to provide CBRE branded services, or that there is any affiliation between CBRE and Capital Commercial.

## COUNT IV
## Common Law Trademark and Trade Dress Infringement

51.    CBRE incorporates by reference the allegations set forth in paragraphs 1 through 50 as if fully set forth herein.

52.    CBRE possesses significant rights in the CBRE trademarks and Trade Dress under common law in the state of Florida and throughout the United States as a result of its widespread and continuous use of the CBRE trademarks and Trade Dress in connection with commercial real estate and financial services offered in this state and elsewhere.

53.    As a result of CBRE's widespread and continuous use of the CBRE trademarks and Trade Dress in the state of Florida and elsewhere, the CBRE trademarks and Trade Dress has become associated in the minds of the relevant consuming public with CBRE.

54.    Capital Commercials' unauthorized use of its marks has caused and is likely to cause confusion as to Capital Commercial's affiliation with CBRE, to the detriment of CBRE.

55.    Capital Commercial's unlawful conduct as set forth herein has and continues to be willful, deliberate, and in bad faith.

56.    Capital Commercial's acts have caused and, unless and until such acts are restrained and enjoined by this Court, will continue to cause irreparable injury to CBRE.

57.    CBRE has no adequate remedy at law for the wrongful acts of Capital Commercial.

## COUNT V
## Common Law Unfair Competition

58.    CBRE incorporates by reference the allegations set forth in paragraphs 1 through 57 as if fully set forth herein.

59.     Capital Commercial's use of CBRE's trademarks and Trade Dress is being done with the intent to palm off Capital Commercial's services as originating or emanating from, or having an affiliation to, CBRE, in order to trade on the goodwill created by CBRE in its trademarks and Trade Dress. Such unauthorized use constitutes the common law tort of unfair competition.

60.     Capital Commercial's unlawful conduct as set forth herein has and continues to be willful, deliberate, and in bad faith.

61.     Capital Commercial's acts have caused and, unless and until such acts are restrained and enjoined by this Court, will continue to cause irreparable injury to CBRE.

62.     CBRE has no adequate remedy at law for the wrongful acts of Capital Commercial.

## COUNT VI
### Deceptive and Unfair Trade Practices
### Under Fla. Stat. § 501.201 *et seq.*

63.     CBRE incorporates by reference the allegations set forth in paragraphs 1 through 62 as if fully set forth herein.

64.     Capital Commercial's acts described in this Complaint constitute unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of trade and commerce, as prohibited by Fla. Stat. § 501.204(1).

65.     Capital Commercial's use of the infringing Capital Commercial marks has caused, and will continue to cause, confusion or misunderstanding as to the source, sponsorships, or approval of Capital Commercial's services.

66.     The relevant consuming public is likely to be confused as to whether Capital Commercial's services are affiliated with CBRE. This conduct has, and will continue to have, an adverse effect on CBRE and on members of the public because Capital Commercial's conduct

wrongly suggests an affiliation or business relationship between Capital Commercial and CBRE that does not exist.

67.     Capital Commercial's unlawful conduct as set forth herein has and continues to be willful, deliberate, and in bad faith. As described above, Capital commercial knew or should have known that its conduct was unfair or deceptive or prohibited by this rule.

68.     CBRE and the general public have been, and continue to be, irreparably damaged by the violation of this statute, and CBRE has no adequate remedy at law. Unless enjoined by this Court, Capital Commercial will continue to use the infringing Capital Commercial marks to further injure CBRE and the relevant consumers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered in its favor and against the Defendant as follows:

1.     Adjudge that the CBRE trademarks have been infringed by Capital Commercial in violation of Plaintiff's rights under 15 U.S.C. § 114;

2.     Adjudge that the CBRE Trade Dress has been infringed by Capital Commercial, and that Capital Commercial has falsely designated the sources of its services, in violation of 15 U.S.C. § 1125(a);

3.     Adjudge that Capital Commercial has engaged in cybersquatting by using the above-identified domain name in violation of 15 U.S.C. § 1125(d).

4.     Adjudge that Plaintiff's common law rights in the CBRE trademarks and Trade Dress has been infringed;

5.     Adjudge that the CBRE Trade Dress has been infringed in violation of Florida statutory law;

6.      Adjudge that Capital Commercial has engaged in deceptive trade practices and competed unfairly with Plaintiff in violation of Plaintiff's common law rights and Florida statutory law;

7.      Adjudge that Capital Commercial and its agents, employees, attorneys, successors, assigns, affiliates, and joint venturers, and any persons in active concert or participation with it, and/or any person acting on behalf of it, be preliminary and permanently enjoined and restrained from:

a.      Selling, offering for sale, advertising, or promoting any services that copy or display any words or symbols that so resemble CBRE's trademarks and Trade Dress as to be likely to cause confusion, mistake, or deception, on or in connection with any service that is not authorized by or for Plaintiff, including, without limitation, any service that (i) bears the CBRE trademarks, (ii) bears CBRE's Trade Dress or any similar logo, or (iii) otherwise approximates Plaintiff's trademarks or Trade Dress;

b.      Using any word, term, name, symbol, device, or combination that (i) causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of Capital Commercial or its services with Plaintiff, or as to the origin of Capital Commercial's services, or (ii) contains any false designation of origin of Capital Commercial's services;

c.      Competing unfairly with Plaintiff in any manner; or

d.      Continuing to perform in any manner whatsoever any of the other acts complained of in this Complaint;

8.      Adjudge that Plaintiff recover from Capital Commercial its damages and lost profits, and Capital Commercial's profits, in an amount to be proven at trial;

9.      Adjudge that Capital Commercial, within thirty (30) days after service of the Court's judgment, be required to file with this Court and serve upon CBRE's counsel a written report under oath setting forth in detail the manner in which it has complied with the judgment pursuant to 15 U.S.C. § 1116(a);

10.     Adjudge that Capital Commercial be required to account for any profits that are attributable to its unlawful acts, and that Plaintiff be awarded Capital Commercial's profits and all damages sustained by Plaintiff under 15 U.S.C. § 1117, plus prejudgment interest;

11.     Adjudge that the amounts awarded to Plaintiffs pursuant to 15 U.S.C. § 1117 shall be trebled;

12.     Adjudge that Plaintiff is awarded statutory damages in amount to be determined by the Court pursuant to 15 U.S.C. § 1117(d);

13.     Adjudge that Plaintiff is awarded its actual damages, plus attorney's fees and court costs, pursuant to Fla. Stat. § 501.211(2);

14.     Adjudge that, in accordance with the common law, Capital Commercial be obligated to pay Capital Commercial's wrongful profits resulting from its aforesaid wrongful acts, CBRE's actual damages, and exemplary and punitive damages in a sum sufficient to deter such wrongful acts in the future;

15.     Adjudge that this is an exceptional case and that Plaintiff be awarded its costs and disbursements incurred in connection with this action, including Plaintiff's reasonable attorneys' fees and investigative expenses; and

16.     Adjudge that all such other relief be awarded to Plaintiff as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all claims and issues so triable as a matter of right.

Dated: May 15, 2019

Respectfully submitted,

By:/s/ *Eric Boos*
Eric Boos
Florida Bar Number 107673
eboos@shb.com
**SHOOK, HARDY & BACON L.L.P.**
201 S. Biscayne Blvd., Ste. 3200
Miami, FL 33131-4310
Tel: 305-358-5171
Fax: 305-3587470

John D. Garretson (*pro hac vice forthcoming*)
jgarretson@shb.com
Mark D. Schafer (*pro hac vice forthcoming*
mschafer@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Tel: 816-474-6550
Fax: 816-421-5547

*Attorneys for Plaintiff*
*CBRE, Inc.*